FILED
2012 Sep-05  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

AMERISURE MUTUAL INSURANCE
COMPANY,

      Plaintiff,

vs.                      CASE NO. CV-11-J-1751-NE

QBE INSURANCE CORPORATION,
and ZURICH AMERICAN INSURANCE
COMPANY,

      Defendants.

## MEMORANDUM OPINION

Pending before the court are cross-motions for summary judgment, evidence, and memoranda of law.[1] QBE filed a response in opposition to Amerisure's motion (doc. 28); Amerisure filed a response in opposition to both defendants' motions (doc. 29); and Zurich filed a response to Amerisure's motion (doc. 33). Thereafter, Amerisure filed a reply to the defendants' opposition (doc. 36), Zurich filed a reply to Amerisure's response (doc. 37), Amerisure filed an additional reply to defendants' oppositions (doc. 38) and QBE filed a reply to Amerisure's opposition (doc. 39). Also pending is a motion by Amerisure to order disclosure of the Amerisure-Bunge

---

[1]These include the motion and memorandum of Zurich American Insurance Company ("Zurich") (doc. 20), evidentiary material by Zurich (doc. 21), the motion, memorandum and evidence of plaintiff Amerisure Mutual Insurance Company ("Amerisure") (doc. 22), and the motion, memorandum and evidence of defendant QBE Insurance Corporation ("QBE") (doc. 23).

settlement agreement (doc. 31) which was entered in the underlying state court litigation.

Having considered the cross-motions of the parties, the evidence submitted, and the relevant law, the court finds as follows:

## I.  Factual Background

The plaintiff filed this diversity action seeking contribution from the defendants based on sums it paid defending an action in state court.  Complaint, ¶¶ 13-15.  The underlying action[2] arose from an injury sustained by Kim Dodson while working for Insulation & Refactories Services, Inc. ("IRS").  In turn, IRS was a contractor to Bunge North America ("Bunge") and Dodson was injured at Bunge's plant in Decatur, Alabama. *Id.*, ¶ 7.  Non-parties Hubbard & Drake General/ Mechanical Contractors, Inc. ("H&D"), and Contractor Service & Fabrication, Inc. ("CS&F") were also named in the state court action.  Complaint, ¶ 8.

Plaintiff Amerisure provided a policy of insurance to IRS, on which Bunge was an additional insured, at the time of Dodson's injury.  Affidavit of Kevin Swan, ¶ 2 (doc. 22-9).  CS&F had a policy of insurance with defendant QBE, on which Bunge appeared as an additional insured.[3]  Complaint, ¶ 11.  Similarly, H&D was insured via

---

[2]The state court complaint appears in the record as Zurich ex. C (doc. 21-2).

[3]Defendant QBE disputes this allegation, asserting Bunge was never named as an additional insured on QBE's policy issued to CS&F.  *See* defendant QBE's motion for summary

a policy from defendant Zurich, on which Bunge was again named as an additional insured.  Zurich ex. B. (doc.  21-1). Neither Zurich nor QBE contributed to the sums Amerisure provided on behalf of Bunge as part of defending or in settlement of the state court action.[4]  Complaint, ¶ 16.  Plaintiff Amerisure now seeks contribution from defendants Zurich and QBE for the settlement and defense costs of the state court action as they related to Amerisure's providing the same on behalf of Bunge.  The undisputed facts are as follows:

H&D performed work for Bunge on a contractual basis.  *See* Amerisure ex. 1 (doc. 22-1).  Pursuant to that contract, H&D was required to maintain insurance for bodily injury, death and property damage, and was required to name Bunge as an additional insured on such a policy.  *Id*., at ZURICH 0659.  Additionally, H&D agreed to

> save and hold [Bunge] .... harmless from and against all liability, claims and demands on account of personal injuries, including death or property loss or damage to others (including but not limited to the Contractor and his employees) arising out of or in any manner connected with the performance of this Agreement, whether such injury, loss or damage shall be caused by the negligence of the Contractor, his

judgment (doc. 23), ¶ 30.  For purposes of this motion, the court finds that the intent of the parties was to include Bunge as an also insured on CS&F's policy with QBE.  For reasons explained herein, whether or not this intent was properly reflected in the policy issued by QBE is not determinative of the outcome of the pending motions.

[4]Amerisure provided a defense and settlement funds on behalf of Bunge in the state court action based on an indemnity agreement between IRS and Bunge, further explained herein.

subcontractor, or any other party for whom the Contractor is responsible.

*Id.*, at ZURICH 0660. The same clause also required H&D to defend all actions arising from the same. *Id.*

Bunge also had a Construction Agreement with CS&F, specifically for purposes of replacing the conveyor system at issue in the underlying action. Amerisure ex. 8 (doc. 22-10). As with the H&D contract, the CS&F agreement had a clause which required CS&F to maintain insurance which named Bunge as an additional insured, and an indemnification and hold harmless clause in favor of Bunge. *Id.*, at QBE - 0115-0116.

The parties to this action agree that Dodson was injured on September 5, 2007, when a lanyard on his safety harness became entangled on the drive shaft of the conveyor belt system around which Dodson was installing insulation. Dodson was employed by IRS, which had contracted with Bunge to install insulation on the conveyor system in question. Depo. of Kim Dodson, at 35, 42 (doc. 21-2). The guard on the drive shaft had been removed, allowing the lanyard to become ensnared. Eugene Moore, the plant manager at the Bunge facility, noted that the lanyard could have become entangled in the drive shaft whether or not the guard was in place, but a guard may have reduced the chance of it happening. Depo. of Eugene Moore, at 19, 218 (doc. 21-1); 115 (doc. 23-1).

4

The parties further agree CS&F installed the conveyor, and H&D aligned the coupling from the motor of the conveyor to its drive shaft after the installation. Moore depo. at 15 (doc. 23-1); 194-195 (doc. 21-1).  Both CS&F and H&D had completed their contract work prior to the time IRS and hence Dodson began the installation of insulation.  Undisputed evidence supports that Bunge was notified that the guard was missing prior to the date of Dodson's accident.  Moore believes CS&F was responsible for installation of the guard as part of its contractual obligations when it was hired to replace the conveyor, reusing the pre-existing drive.  Moore depo. at 15-16 (doc. 23-1).  He agrees the guard was not in place at the time that H&D began its work, after CS&F had finished.  Moore depo. at 195 (doc. 21-1); *see also* depo. of Doug Fromhold,[5] at 29 (doc. 21-2); depo. of Raymond Gandlin, at 15-16 (doc. 23-2).  According to Fromhold CS&F – and not H&D –  was responsible for replacing the guard.  Fromhold depo. at 109, 119 (doc. 21-2).  According to CS&F, no guard was in place when it first began the replacement work nor was fabrication of a guard within CS&F's scope of work.  Depo. of Gary Lafavor, Jr., at 37-38, 46 (doc. 23-1).  CS&F completed all work for Bunge by August 16, 2007, and left the facility on that date.  *See* QBE exs. E and F.

---

[5]Fromhold was a maintenance manager for Bunge.  *See* Zurich motion (doc. 20) at 8-9.

The underlying state court action was ultimately settled.  The plaintiff now seeks repayment of some of the funds it spent defending and indemnifying Bunge on behalf of IRS.  The parties do not dispute that this case is governed by Alabama law and hinges exclusively on contract interpretation.

**The QBE Policy**

The insurance policy issued by QBE to CS&F reads as follows in relevant part:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
1.      Your acts or omissions; or
2.      The acts or omissions of those acting on your behalf;
In the performance of your ongoing operations for the additional insured.
A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

Plaintiff ex. 10 (doc. 22-13).

QBE provided a defense to its own insured, CS&F, in the underlying state court case under a reservation of rights.  *See* QBE's motion for summary judgment, at 6.  However, QBE denied Bunge's claim for indemnity.  *Id*., at 7.  In the underlying

state court litigation, CS&F filed a cross-claim against Bunge, asserting that it had a right to indemnity from Bunge and that Bunge had no right to indemnity from CS&F. QBE's motion for summary judgment, at 7.  Bunge made a similar cross-claim against CS&F.  *Id*; see also QBE ex. J.

The **Zurich Policy**

The insurance policy issued by Zurich to H&D reads as follows in relevant part:

**Additional Insured – Automatic - Owners, Lessees Or Contractors - Broad Form**

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
Commercial General Liability Coverage Part

**A.  WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

B.  The insurance provided to additional insureds applies only to "bodily injury", "property damage" or "personal and advertising injury" covered under **Section I, Coverage A, BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **Coverage B, PERSONAL AND ADVERTISING INJURY LIABILITY**, but only if:

> 1.  The "bodily injury" and "property damage" results from your negligence; and

> 2.   The "bodily injury", "property damage" or "personal and advertising injury" results directly from:

>> a.  Your ongoing operations; or

>> b.   "Your work" completed as included in the "products-completed operations hazard," performed

> for the additional insured, which is the subject of the
> written contract or written agreement.
>
> ....
>
> D.  The insurance provided to the additional insured person or organization does not apply to:
>
> > 1.  "Bodily injury", "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured; or
>
> ....
>
> E.  The additional insured must see to it that:
>
> > 1.  We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;
> >
> > 2.  We receive written notice of a claim or "suit" as soon as practicable; and
> >
> > 3.  A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

Plaintiff ex. 2 (doc. 22-2), at 17 of 44.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational

trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

### III.  LEGAL ANALYSIS

Because this case was submitted to the court on cross-motions for summary judgment, and the underlying facts of this case are not in dispute, the court finds that this case may be wholly resolved by ruling on the pending motions.

The dispute before this court is whether, pursuant to Bunge's status as an additional insured on the QBE and Zurich policies issued to CS&F and H&D respectively, Amerisure has a right to contribution from QBE and Zurich for funds paid on behalf of Bunge in settlement of the state court action.  The parties do not dispute that plaintiff provided a defense and indemnity to Bunge as an additional insured on the policy of insurance Amerisure provided to IRS.  According to Amerisure, Bunge also sought a defense and indemnity from Zurich and QBE, neither of which provided the same.  *See* plaintiff exs. 6(a), 6(b), 12.  Amerisure paid $547,020.99 as defense costs on behalf of Bunge, and another $350,000.00 towards settlement of the state court action against Bunge.  Plaintiff ex. 7.

### A.  Duty to Defend

Plaintiff Amerisure asserts that because the state court action stated claims for negligence against Bunge, H&D and CS&F, the duty to defend arose.  To determine an insurer's duty to defend its insured, a court looks to the language of the insurance policy and the allegations in the complaint filed against the insured. *Thorn v.*

*American States Ins. Co.*, 266 F.Supp.2d 1346, 1349 (M.D.Ala. 2002) ("An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."); *Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993) ("The insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured.") "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala.1991). However, an insurer does not have a duty to defend or indemnify when the complaint shows either the non-existence of coverage or the applicability of a policy exclusion. *See Alfa Specialty Ins. Co. v. Jennings*, 906 So.2d 195 (Ala.Civ.App.2005).

The state court complaint alleges that defendant Bunge "knew or should have known that the motor shaft was not properly covered..." and that defendants "negligently operated, designed, constructed, installed, maintained and controlled E-1 conveyor drive motor ..." State court complaint, submitted as Amerisure ex. 5, at ¶¶ 9-10. It also alleges that H&D and CS&F "constructed, repaired, maintained, and/or inspected the E-1 conveyor drive motor ... prior to September 5, 2007," that these

defendants "knew or should have known that the motor shaft was not properly covered..." and that Dodson's injuries "were proximately caused or contributed to by the negligence of these Defendants..." *Id.*, at ¶¶ 22-24.

Amerisure asserts these allegations were sufficient as a matter of law to raise the duty to defend by defendants QBE and Zurich both on behalf of their own insureds and also on behalf of Bunge as an additional insured under the policies. Zurich counters that it had no duty to provide contribution because its insured, H&D, had no responsibility or duty concerning the guard in question.[6]

Under Alabama law, the allegations of the complaint, not ultimate liability, control. *See e.g. Chandler*, 585 So.2d at 1367; *Gunnin v. State Farm and Cas. Co.*, 508 F.Supp.2d 998, 1002 (M.D.Ala.2007) ("If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured.") (citation omitted). The state court complaint squarely alleged H&D was negligent, triggering Zurich's duty to defend H&D. Because the allegation of negligence related to the time H&D performed work in the Bunge facility, and because Bunge was also named in the state court action, the duty to defend Bunge as

---

[6]Zurich also argues that even if there is a duty to defend, Amerisure has not established that the defense costs incurred were reasonable or necessary. Zurich opposition (doc. 33), at 3. The court finds that issue separate and distinct from the question of whether the duty to defend arose.

an additional insured was triggered.  Whether or not there was liability for "bodily injury," as argued by Zurich, presents a separate question of coverage.  *See* Zurich memorandum, at 13.

Similarly, defendant QBE asserts that it had no liability for the negligence of Bunge, and that Bunge's negligence was solely responsible for Dodson's injuries. However, as stated above, the duty to defend is determined the allegations of the complaint, not the determination of liability.  When CS&F was named as a defendant by Dodson in the state court action, QBE's duty to defend CS&F was triggered. Because the alleged negligence necessarily had to occur during the time CS&F was performing contractual work at the Bunge facility, QBE's duty to defend Bunge as an additional insured was triggered as well.  Such a finding is solely a matter of contract law.

However, having determined that the duty to defend existed, the court is of the opinion that such determination does not resolve the matter as all the parties to this action, on behalf of their respective insureds, entered releases in settlement of the state court action.  The court addresses the effect of those releases on the duty to defend below.  Similarly, the court considers Zurich and QBE's other defenses to Amerisure's claims of contribution for defense costs herein.

### 2.  Duty to Indemnify

The duty to indemnify does not rise out of the existence of a duty to defend. *See e.g.*, *Allstate Indem. Co. v. Lewis*, 985 F.Supp. 1341, 1349 (M.D.Ala.1997) ("Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial."). "Although the bare allegations of the complaint may trigger an insurer's duty to defend its insureds, '[t]he duty to pay ... must be analyzed separately.'" *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 792 (Ala.2002) (quoting *United States Fid. & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1167 (Ala.1985)). "The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1066 (Ala.2003) (quoting *City Realty, Inc. v. Continental Cas. Co.*, 623 So.2d 1039, 1047 (Ala.1993)).

Amerisure argues that because both H&D and CS&F signed contracts to secure the work in question with Bunge, and because the contracts included indemnity agreements in favor of Bunge, the duty to indemnify was established. Amerisure motion (doc. 22), at 15.  Amerisure further asserts that the court must look to the language of the contract, rather than the findings of liability or lack thereof by the state court.

Thus, the court first looks to the contracts between Bunge and H&D, and Bunge and CS&F before considering the language of the CGL policies.  *See e.g., Pacific Life Insurance Co. Ltd. v. Liberty Mut. Insurance Co.*, 2005 WL 1801602, *7 (M.D.Ala.2005) (quoting *Chubb Ins. Co. of Canada v. Mid-Continent Cas. Co.*, 982 F.Supp. 435, 438 (S.D.Miss.1997) (finding the indemnity agreement controls irrespective of insurance clauses because "[a] contrary conclusion 'would render the indemnity contract between the insureds completely ineffectual and would obviously not be a correct result, for it is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities one to the other.'").

Clearly, if the contract language does not require indemnity, then the court need not consider whether the CGL policies provide coverage for that obligation.  As previously stated, the Bunge/H&D contract required H&D to

> save and hold [Bunge] .... harmless from and against all liability, claims and demands on account of personal injuries, including death or property loss or damage to others (including but not limited to the Contractor and his employees) arising out of or in any manner connected with the performance of this Agreement, whether such injury,  loss or damage shall be caused by the negligence of the Contractor, his subcontractor, or any other party for whom the Contractor is responsible.

Amerisure ex. 1 (doc. 22-1), at ZURICH 0660.  Similarly, the Bunge/CS&F contract stated that

15

> The Contractor shall save and hold [Bunge] ... safe and harmless, from
> and against all liability and demands on account of personal injuries ...
> arising out of or in any manner connected with the performance of this
> Agreement, whether such injury, loss or damage shall be caused by the
> negligence of the Contractor, his subcontractor, or any other party for
> whom the Contractor is responsible....

Amerisure ex. 8, at QBE - 0116.

Both the agreements and the policies of insurance in question limit coverage to Bunge as an additional insured to liability resulting from the negligence of the contractor, specifically H&D in the Zurich policy and CS&F in the QBE policy.  In other words, as a condition of obtaining the contracts with Bunge, both CS&F and H&D signed agreement with Bunge which required CS&F and H&D to indemnify Bunge and to name Bunge as an additional insured on their respective insurance policies, but only for the contractor's own negligence.  The clear intent of those agreements was to protect Bunge from liability for negligence by CS&F and H&D.  Bunge's own negligence is not covered in either the agreements or the additional insured clauses of the relevant contracts of insurance.  The court finds that nothing in the policies of insurance in question could extend coverage to Bunge as an additional insured for Bunge's own negligence.  *See e.g., American and Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So.2d 1226 (Ala.1997) ("interpretation of an insurance policy is a question of law for the court to decide."); *American Resources Ins. Co. v. H & H Stephens Const., Inc.*, 939 So.2d 868, 873 (Ala.2006) ("a court cannot

16

consider the language in the policy in isolation, but must consider the policy as a whole") (citations omitted).

As stated above, Amerisure argues that the court must look to the language of the contract, rather than the findings of liability or lack thereof by the state court. However, such mistates the law in Alabama.[7]  Having determined that the indemnity agreements and additional insured clauses of the insurance contracts limit liability for coverage for Bunge to H&D and CS&F's own negligence, the issue becomes whether the state court ever determined Dodson's claims against Bunge arose out of the negligence of the two contractors.  It did not.  Prior to a determination of whose negligence caused Dodson's injuries, the parties in the underlying action entered settlement agreements, resolving the entire case.  Hence, the court examines the settlement agreements entered in the state court action.

H&D was released from the underlying action by Dodson, although the sum paid in exchange for the release has not been provided to this court.  *See* Zurich ex. J (doc. 21-2).  Regardless of the sum involved, the Pro Tanto Release reflects that

---

[7]*See e.g., Pharmacists Mut. Ins. Co. v. Godbee Medical Distributors, Inc*., 733 F.Supp.2d 1281, 1286 (M.D.Ala.,2010)

> In other words, "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Insurance v. Zavalis*, 52 F.3d 689, 693 (7th Cir.1995); see also *Lime Tree Village Community Club Ass'n, Inc*., 980 F.2d at 1407 ("While our conclusion is that the duty to defend was upon State Farm, we express no opinion as to whether or not the plaintiffs in the underlying cases are entitled to recover or whether or not, if there be recoveries, State Farm is required to indemnify.").

H&D contributed a sum of money towards the settlement of the state court action and that the Release and payment "satisfies any claim made against the Releasee from allegations involving independent negligence of Hubbard & Drake...."  *Id.*, at 2. Similarly, CS&F was released from the state court action for the sum of $200,000.00, with no admission of fault or other wrongdoing.  QBE ex. K (doc. 23-2).

As stated previously, the contractual duties to indemnify Bunge was specific to the negligence of the contractors.  They did not provide blanket protection to Bunge, as Amerisure seems to argue, for Bunge's own negligence.  Rather, only if Dodson's "personal injuries ... [arose] out of or [were] in any manner connected with the performance of th[e] Agreement, whether such injury, loss or damage [was] caused by the negligence of the Contractor, his subcontractor, or any other party for whom the Contractor is responsible...." can there be liability for indemnification from the contractors to Bunge.  *See* Amerisure ex. 1, at ZURICH 0660;  Amerisure ex. 8, at QBE - 0116.  Thus, Amerisure must prove more than that it paid settlement sums on behalf of Bunge to be entitled to contribution by Zurich or QBE.  Rather, it must prove it settled claims against Bunge which arose from H&D's and/or CS&F's own negligence.[8]

---

[8]Amerisure argues that Zurich and QBE waived their rights to challenge the sum Amerisure paid to Dodson to settle Dodson's claims against Bunge.  Amerisure motion for summary judgment (doc. 22), at 14.  However, the case it relies on for this proposition, *Twin City Fire Ins. Co. v. Amerisure Ins. Co.,* 2008 WL 2678434, 4 (S.D.Ala.2008), also recognizes that "in *Star Electrical Contractors, Inc. v. Stone Building Co.*, 863 So.2d 1071 (Ala.2003) ... the

Not surprisingly, there is substantial finger pointing among the parties to this action as to who is responsible for Dodson's injuries.  While the parties agree that Bunge knew the guard was missing from the conveyor system after CS&F completed its work and left Bunge's premises, and after H&D completed its work and left Bunge's premises, they dispute who, between CS&F and Bunge, was responsible for leaving the guard off of the motor.   The settlement agreements are of no assistance in this regard, as they all disclaim any admission of any liability for any of Dodson's injuries.

Amerisure's claim against Zurich as the insurer of H&D is the easier of the claims to resolve.  None of the parties claim that H&D was negligent in any manner or that H&D had any responsibility to ensure that the guard was in place.  In other words, there is no "liability, claims and demands on account of personal injuries ....arising out of or in any manner connected with the performance of this Agreement [of which the injury, loss or damage [was] caused by the negligence of the Contractor, his subcontractor, or any other party for whom the Contractor is responsible." Amerisure ex. 1 (doc. 22-1), at ZURICH 0660.   Because the parties seemingly agree that there was no triggering event causing liability arising out of H&D's performance

Court clarified that precluding an indemnitor from 'contesting its own liability under the indemnification agreement' due to its failure to defend or participate in settlement discussions 'is not the law of indemnity.' *Id.* at 1078.*"  Twin City Fire Ins. Co.*, 2008 WL 2678434 at 4.  Rather, "[w]aiver is the intentional relinquishment of a known right." *Id., (quoting Edwards v. Allied Home Mortgage Capital Corp.), 962* So.2d 194, 208 (Ala.2007).

of the agreement, there is no basis for Amerisure to require indemnification from H&D through Zurich. *See e.g., Craig Const. Co., Inc. v. Hendrix*, 568 So.2d 752, 756 (Ala.1990) (quoting *Industrial Tile, Inc. v. Stewart*, 388 So.2d 171, 176 (Ala.1980)) ("[I]ndemnification for one's own negligence is available only where 'the parties knowingly, evenhandedly, and for valid consideration intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language.'"). As the Court in *Craig* noted, "[w]hen one seeks indemnification from another for damages that were caused by his own negligence, strict construction of the indemnity agreement against the contractor is particularly appropriate." *Id.*, at 757.

Having considered the foregoing, the court is of the opinion that Amerisure's motion for summary judgment, as it relates to H&D, is due to be denied on the issue of indemnity, and that Zurich's motion for summary judgment, on the issue of indemnity, is due to be granted. The court shall so rule by separate Order. Because the court finds Zurich has no obligation as to contribution to settlement costs, the court does not reach Zurich's other arguments on this subject.

The same issue with regard to CS&F, and hence QBE, has more twists and turns. Defendant QBE first argues that Bunge was not an additional insured at the

time of Dodson's injury, because CS&F had finished its operations, thus ending Bunge's status as an additional insured.  QBE's opposition (doc. 28), at 2.  Under the terms of the policy, coverage extended to an additional insured is subject to an exclusion which states

> This insurance does not apply to:
> ....
> 2.  "Bodily injury" ... occurring after:
>     a.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of covered operations has been completed; or
>     b.  That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Plaintiff ex. 9A (doc. 22-12, at p. 14 of 54).  The only means by which the court can give meaning to the relevant sections of the QBE policy is to find that any coverage extended to Bunge as an additional insured ended when Bunge put the conveyor system to its intended use and CS&F completed its work.  *See State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 309 (Ala.1999) (when a court construes an insurance policy, "the terms of an insurance policy should be given a rational and practical construction").  Having undertaken this analysis, the court finds that, regardless of whether the QBE policy provided coverage for "completed operations" is not essential to resolution of the pending motion.

21

Rather, the issue before the court can be completely resolved by the parties' actions in state court.  In the underlying case, Bunge and CS&F filed cross-claims against each other, specifically on the coverage Amerisure now asserts against QBE.[9] *See* QBE motion for summary judgment, at 7; QBE's opposition, at 5-6.  The joint stipulation states that CS&F and Bunge "hereby stipulate to the dismissal, with prejudice, of the Cross-Claim for Indemnification and Complaint for Declaratory Judgment filed by CS&F against Bunge ... and the Counter-Claim filed by Bunge against CS&F...."  QBE ex. L (doc. 23-2).

Clearly, Bunge dismissed its claim for indemnification against CS&F.  Amerisure, acting on that very claim, seeks contribution from QBE on behalf of CS&F based on that same indemnification agreement.  Amerisure, as the insurer for IRS, acted on behalf of Bunge in the underlying suit, based on IRS's indemnification agreement with Bunge.  Standing in Bunge's shoes for such purposes, and Bunge having settled its claims for indemnification with CS&F, there is nothing left for Amerisure to collect.  Most tellingly, the Settlement Agreement and Mutual Release states in relevant part, that

> ...Bunge shall by this Agreement fully and finally release .... CS&F from any and all claims, subrogation claims ... whether known or unknown to the parties, whether foreseen or unforeseen  ... and whether or not

---

[9]The court notes CS&F contributed to the settlement of the underlying case, settling Dodson's claim against it for the sum of $200,000.00.  QBE Exhibit K, (doc. 23-2).

asserted in the Action for any incidents which may have existed prior to, or contemporaneously with the execution of this Agreement that arise or could have arisen out of ... the claims in the Action, including but not limited to any past, present or future obligations, known or unknown, for the defense of liability, indemnity, or reimbursement of costs, expenses, losses, or damages arising out of the claims asserted in the Action...

.....

CS&F further represents and warrants that it has obtained, or will obtain, a release of any and all rights, including subrogation rights, that QBE Insurance Corporation may have against Bunge in connection with the Action and the claims released by CS&F.   Similarly, Bunge represents and warrants that it has obtained or will obtain a release of any and all rights, including subrogation rights, that ACE American Insurance Company and Amerisure Insurance Company may have against CS&F in connection with the Action and the claims released by Bunge herein.

QBE ex. K (doc. 23-2, at 40 of 57).  If Amerisure wished to have retained its claim for contribution based on the indemnity agreement against CS&F, it should not have released this very claim while acting on behalf of Bunge.  Clearly, without a valid claim for indemnity against CS&F, there can be no valid claim for the same against CS&F's insurer.[10]  See e.g., *Allstate Ins. Co. v. Amerisure Ins. Companies,* 603 So.2d 961, 965 (Ala.1992)("The point is that Amerisure, in settling with Demo, did not preserve its right to proceed against Allstate either by giving Allstate notice of such

---

[10]*See also Federal Ins. Co. v. Travelers Cas. and Sur. Co.,* 843 So.2d 140, 144 (Ala.2002).  Although that case was in the context of subrogation rather than indemnification, the principle that a claim must exist against an insured before an insurer can have liability is present in both. Hence, the Alabama Supreme Court recognized that "[i]t is well-settled that an insurer that, through subrogation, "stands in, the shoes" of its insured may assert only claims that would be validly asserted by the insured." *Id.,* (citations omitted).

23

an intent or by postponing the settlement until after this Court had ruled in its appeal

from Allstate's declaratory judgment.").

Even if the court found that Amerisure somehow preserved its right to

contribution in spite of the underlying settlement agreement, yet another problem

exists for plaintiff:

> It has been the law in Alabama for over 150 years that where one party, with full knowledge of all the facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion. *Weaver, supra*; *H.A. Edwards Ins. Agency v. Jones*, 242 Ala. 624, 7 So.2d 567 (1942); *National Bank of Boaz v. Marshall County*, 229 Ala. 369, 157 So. 444 (1934); *Town Council of Cahaba v. Burnett*, 34 Ala. 400 (1859); *Jones v. Watkins*, 1 Stew. 81 (Ala.1827); *Clifton, supra*; *Thornton v. Singer Sewing Mach. Co.*, 34 Ala.App. 162, 37 So.2d 239 (1948). A "voluntary payment" has been defined as "a payment made by a person of his own motion, without compulsion; a payment made without a mistake of fact or fraud, duress, coercion, or extortion, on a demand which is not enforceable against the payor." 70 C.J.S. Payment § 100 (1987).

*Mount Airy Ins. Co v. Doe Law Firm,* 668 So.2d 534, 537-538 (Ala.1995).  Although

the factual background in that case was not the same as here, the court finds the

reasoning helpful.  Once Amerisure settled Dodson's claim against Bunge, Amerisure

had no right to seek recoupment of this voluntary payment.  The Alabama Supreme

Court noted that to preserve a right to reimbursement, "the insurer must first obtain

either a written agreement with its insured that it does not waive such a right by

making the payment, or obtain a court order granting the insurer the authority to

participate in the settlement without waiving any right to reimbursement." *Id*., at 538. *See also Home Insurance Com. v. Hartford Fire Insurance Co.*, 379 F.Supp.2d 1282, 1290 n. 8 (M.D.Ala.2005); *Allstate Ins. Co. v. Amerisure Ins. Companies,* 603 So.2d 961, 966 (Ala.1992) ("Because Sherrill could not recover from Allstate any payments that he might make voluntarily, neither can Amerisure.").

Because the court finds the release dispositive of the issues before it, the court does not reach the other arguments of QBE as to why it owes no indemnification to Amerisure.

The court further finds that state court settlement agreement resolved the issue of whether QBE owes Amerisure contribution for defense costs in the underlying state court case. At the time that agreement was reached, Amerisure had to be aware of both its defense costs, and the fact that QBE had not contributed to the same. Yet Amerisure, acting through Bunge, entered an agreement for CS&F to be dismissed without retaining any right to recoup defense costs. Having done so, Amerisure cannot receive reimbursement from QBE for these costs now, for the same reasons explained above.

Therefore, the court shall grant defendant QBE's motion for summary judgment against Amerisure, and deny Amerisure's motion for summary judgment against QBE, by separate Order.

25

*3. Claim for Defense Cost Contribution by Amerisure against Zurich:*

The sole remaining possibility for recovery in this action is on Amerisure's claim for contribution from Zurich for costs incurred in defending the state court action. Zurich asserts that Bunge's failure to make a demand for coverage as an additional insured under the policy until six months after the accident acts as a bar to Zurich's obligation to have provided a defense. Zurich motion (doc. 20) at 18-19. Zurich's first notification of the accident was on March 3, 2008, because Dodson's counsel filed pre-suit discovery. Bunge did not inform Zurich it was making a claim for coverage as an additional insured on the Zurich policy until August 27, 2008. Zurich motion (doc. 20) at 19. Although Zurich styles this as a six month or longer delay in notification, the court finds it was the filing of the state court action on May 20, 2008, which triggered any indemnification obligation, rather than the date of the injury. *See* plaintiff exhibit 5 (state court complaint). Thus, Zurich was notified by Bunge of the claim for coverage within three months. The court finds this argument of Zurich's without merit.

Zurich next argues that plaintiff Amerisure has not shown that the $457,000.00 it seeks to recover in defense costs was reasonable or necessary. Zurich opposition (doc. 33) at 3-4. As pointed out by Zurich, Amerisure has provided no invoices, evidence or testimony regarding the basis for the defense costs. *Id*. The sole

evidence in support of this claim is the affidavit of Kevin Swan.  Plaintiff exhibit 7.
That affidavit states that Amerisure provided a defense to Bunge pursuant to its status
as an additional insured under the Amerisure policy and that Amerisure incurred
$457,020.99 in defense fees.  *Id.,* ¶¶ 2-3.  Mr. Swan does not state whereby he came
by knowledge of these facts, or whom he might be to have such knowledge.  Also
absent is any evidence that Amerisure actually paid such fees.

Even more troubling to the court is the lack of any evidence that but for the
allegations of H&D's negligence in the underlying state court action these fees would
not have been incurred.  Clearly, Zurich was present in the state court defending its
insured, H&D.  Amerisure provides no argument, let alone evidence, that it did not
incur these fees in the defense of Bunge alone. Under the indemnification agreement,
and as explained above, any duty for H&D to indemnify Bunge could arise solely
from H&D's own negligence.  As such, Zurich, as H&D's insurer, could have no duty
to provide a defense to Bunge for Bunge's negligence.

"A contractual obligation to indemnify is distinct from a contractual obligation
to procure insurance. Under an agreement to indemnify, the promisor assumes
liability for all injuries and damages upon the occurrence of a contingency. In
contrast, an agreement to obtain insurance involves the promisor's agreement to
obtain or purchase insurance coverage, regardless of whether [a] contingency

occurs...."  *See e.g., Doster Constr.Co., Inc. v. Marathon Elec. Contractors, Inc.,* 32 So3d 1277, 1284 (Ala.2009) (quoting *Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co.*, 629 So.2d 633, 639 (Ala.1993)).  Clearly, H&D met its obligation to name Bunge as an additional insured on its CGL policy.  However, that policy only insured for the contingencies set out in the indemnity agreement, namely, that H&D would indemnify Bunge for damages claimed from H&D's negligence.[11]  That contingency has not occurred, because H&D was dismissed from the underlying action with no admission of negligence.  Even had H&D not been so dismissed, Amerisure has failed to produce any evidence that the costs it incurred were for the defense of anything other than Bunge for Bunge's own negligence.[12]  Because such costs are not within the scope of the Zurich policy, the plaintiff has failed to establish

---

[11]Specifically, the policy stated:

D.  The insurance provided to the additional insured person or organization does not apply to:

    1.  "Bodily injury", "property damage" or "personal and advertising injury" that results solely from negligence of the additional insured....

[12]Such a finding is in line with cases such as *Jack Smith Enterprises v. Northside Packing Co.,* 569 So.2d 745, 746 (Ala.Civ.App.1990), which held indemnification, "including attorney fees, is allowed where one is defending claims predicated solely upon another defendant's negligence; however, where one is defending for his own benefit, an award of attorney fees will not be allowed."

any genuine issue of material fact which remains for trial on the issue of contribution for defense costs.   The court shall enter an order accordingly on this claim.

## IV.  Conclusion

Having considered the arguments of the parties, the facts of this case and the relevant law, the court finds no genuine issues of material fact remain.  Defendant QBE is entitled to judgment in its favor and against the plaintiff as a matter of law on Amerisure's claims against QBE.  Defendant Zurich is entitled to judgment in its favor and against the plaintiff as a matter of law on Amerisure's claim for contribution for settlement costs.  Zurich also is entitled to judgment in its favor and against defendant Amerisure as a matter of law on Amerisure's claim for contribution for defense costs.  The court shall so Order.

**DONE** and **ORDERED** this the 5th  day of September, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE